# No. 22-1191

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

ROBERT E. SHAPIRO,

Plaintiff-Appellee,

v.

UNITED STATES SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellant.

_____

On Appeal from the United States District Court
for the District of Vermont

_____

## BRIEF FOR APPELLANT UNITED STATES SOCIAL SECURITY
## ADMINISTRATION

_____

*Of Counsel:*

ROYCE B. MIN
*General Counsel*

*U.S. Social Security Administration*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

NIKOLAS KEREST
*United States Attorney*

CHARLES W. SCARBOROUGH
CAROLINE D. LOPEZ
*Attorneys, Appellate Staff*
*Civil Division, Room 7535*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4825*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ................................................................................1

STATEMENT OF THE ISSUES................................................................................1

STATEMENT OF THE CASE ................................................................................2

      A.     Statutory Background ................................................................................3

            1.     FOIA's Fee Provisions ................................................................3

            2.     SSA's Independent Fee Statute ................................................5

      B.     Factual Background ................................................................................7

      C.     Prior Proceedings ................................................................................9

SUMMARY OF ARGUMENT................................................................................ 12

STANDARD OF REVIEW ................................................................................ 13

ARGUMENT ................................................................................ 14

I.     The District Court Erred in Holding that Plaintiff Was Entitled to a Refund of the FOIA Search Fee Charged by SSA. ................................ 14

II.    The Attorney's Fee Award Should Be Vacated Because the District Court's View that Plaintiff Substantially Prevailed Rested in Part on its Erroneous Holding that Plaintiff Was Entitled to a Fee Waiver. ...................... 19

CONCLUSION ................................................................................ 21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                         **Page(s)**

*Connecticut Nat'l Bank v. Germain,*
503 U.S. 249 (1992) ................................................................. 16

*Farrar v. Hobby,*
506 U.S. 103 (1992) ................................................................. 19

*Maine Cmty. Health Options v. United States,*
140 S. Ct. 1308 (2020) ............................................................. 16

*Morton v. Mancari,*
417 U.S. 535 (1974) ............................................................. 16, 17

*NLRB v. SW Gen., Inc.,*
137 S. Ct. 929 (2017) ............................................................... 16

*Pietrangelo v. U.S. Army,*
568 F.3d 341 (2d Cir. 2009) ................................................. 13, 19

**Statutes:**

Freedom of Information Act (FOIA):
5 U.S.C. § 552 *et seq.* ................................................................ 3
5 U.S.C. § 552(a)(4) ................................................................. 4
5 U.S.C. § 552(a)(4)(A) ............................................................. 1
5 U.S.C. § 552(a)(4)(A) (1982) ............................................... 3, 17
5 U.S.C. § 552(a)(4)(A)(i) .......................................................... 4
5 U.S.C. § 552(a)(4)(A)(ii) ......................................................... 4
5 U.S.C. § 552(a)(4)(A)(iii) ........................................................ 4
5 U.S.C. § 552(a)(4)(A)(iv) ........................................................ 4
5 U.S.C. § 552(a)(4)(A)(vi) ................................................. 4, 16, 17
5 U.S.C. § 552(a)(4)(A)(viii) ................................................... 4, 10
5 U.S.C. § 552(a)(4)(A)(viii)(I) .................................................... 8
5 U.S.C. § 552(a)(4)(B) ............................................................. 1
5 U.S.C. § 552(a)(4)(E)(i) .......................................................... 19

Freedom of Information Reform Act of 1986,
Pub. L. No. 99-570, §§ 1801-1804,
100 Stat. 3207, 3207–48-50 (1986) ............................................. 4

Omnibus Budget Reconciliation Act of 1981,
   Pub. L. No. 97-35, § 2207, 95 Stat. 357, 838-39 ...................................... 5, 18

6 U.S.C. § 488a(h)(1) ........................................................................... 15

6 U.S.C. § 623(a) ................................................................................ 15

6 U.S.C. § 623(e) ................................................................................ 15

10 U.S.C. § 130b(a) ............................................................................ 15

10 U.S.C. § 1506(f) ............................................................................. 15

28 U.S.C. § 1291 ................................................................................. 1

28 U.S.C. § 1331 ................................................................................. 1

42 U.S.C. § 405(c)(2)(A) ...................................................................... 6

42 U.S.C. § 1306(c) ................................. 1, 2, 5, 6, 7, 10, 12, 14, 15, 16, 17, 19

44 U.S.C. § 1708 (1982) ....................................................................... 15

48 U.S.C. § 2124(c) ............................................................................. 15

49 U.S.C. § 114(r)(1) ........................................................................... 15

49 U.S.C. § 31143(b) ........................................................................... 15

49 U.S.C. § 44912(d)(2)(A) ................................................................... 15

49 U.S.C. § 44921(b)(5) ....................................................................... 15

**Regulations:**

20 C.F.R. § 402.170(a)(1) ..................................................................... 6

20 C.F.R. § 402.170(a)(2) ..................................................................... 6

20 C.F.R. § 402.170(b) ......................................................................... 6

20 C.F.R. § 402.175(a) ....................................................................... 6, 7

20 C.F.R. § 402.175(c) ......................................................................... 7

20 C.F.R. § 402.185 ................................................................................ 6

**Legislative Materials:**

132 Cong. Rec. 29,618 (1986) ............................................................. 15

H.R. 3982, 97th Cong. § 2207 (1981) .................................................. 18

H.R. Rep. No. 97-158 (1981) ..................................................... 6, 14, 18

H.R. Rep. No. 97-208 (1981) (Conf. Rep.) ................................... 6, 18

H.R. Rep. No. 110-45 (2007) ............................................................... 19

H.R. Rep. No. 114-391 (2016) ............................................................. 19

S. 1377, 97th Cong. § 707 (1981) ........................................................ 18

S. Rep. No. 97-139 (1981) .......................................................... 6, 14, 18

S. Rep. No. 110-59 (2007) ................................................................... 19

S. Rep. No. 114-4 (2015) ..................................................................... 19

**Other Authority:**

SSA, *SSA FOIA Annual Report Fiscal Year 2021*, § X,
    https://perma.cc/962Y-MSNE .................................................... 18

## STATEMENT OF JURISDICTION

Plaintiff, Robert E. Shapiro, invoked the jurisdiction of the district court in this Freedom of Information Act (FOIA) suit under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. On March 8, 2021, the district court granted in part the Social Security Administration's (SSA) motion for summary judgment, concluding that plaintiff's FOIA request was overly broad and burdensome but also ruling that SSA had waived the right to collect fees for the initial search because the agency's responses were untimely. JA 104-22. On December 10, 2021, the court upheld SSA's withholdings for the documents it had already processed but determined that plaintiff was eligible for attorney's fees. JA 134-50. On March 30, 2022, the court awarded attorney's fees and entered final judgment. JA 151-59. The government filed a timely notice of appeal on May 27, 2022. JA 160-61. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

This case concerns the intersection of the Freedom of Information Act and a separate statute authorizing the Social Security Administration to recover the full costs of responding to certain information requests. FOIA generally permits agencies to charge fees for document search and duplication but also limits or prohibits such charges in certain circumstances. *See* 5 U.S.C. § 552(a)(4)(A). Other statutes, however, authorize specific agencies to charge fees to cover the costs of responding to requests for certain documents and information pursuant to rules that may differ from the general FOIA rules. One such statute, 42 U.S.C. § 1306(c), authorizes SSA to require

payment of the "full cost" of responding to "request[s] for information" that are "not directly related to the administration of the [SSA] program or programs," and to do so "[n]otwithstanding" section 552 of FOIA or "any other provision of law." The questions presented are:

1. Whether 42 U.S.C. § 1306(c)—which grants SSA specific authority to charge the "full cost" of responding to certain requests for information "[n]otwithstanding" FOIA or "any other provision of law"—displaces any contrary rules under FOIA.

2. If the district court's ruling that plaintiff is entitled to a fee waiver is reversed, whether the fee award should be vacated because plaintiff no longer prevailed on any significant issue.

## STATEMENT OF THE CASE

This case arises from a broad FOIA request submitted by plaintiff Robert E. Shapiro. Plaintiff claimed that SSA did not conduct an adequate search, did not provide a sufficient basis for its withholdings under Exemptions 5 and 6, and could not charge any fees for conducting the search because the agency's responses were untimely under FOIA. In the first opinion and order, Judge Reiss of the U.S. District Court for the District of Vermont held that SSA was not required to process plaintiff's FOIA request because the request was unduly burdensome. Nevertheless, the court required SSA to provide an additional explanation for the withholdings of those documents the agency had already processed as part of its initial response, which occurred prior to SSA's further searches and ultimate determination that the

2

request was unreasonably broad and burdensome to process. *See* JA 116. The court also concluded that plaintiff was entitled to a refund of fees SSA had charged for conducting its search for responsive documents because SSA had not responded within FOIA's time limits, even though an independent statute authorized SSA to recover the full costs of such searches "[n]otwithstanding" any provision of FOIA. *See* JA 117-20. In the second opinion and order, the Court upheld SSA's withholdings from its initial response but nevertheless concluded that plaintiff substantially prevailed and was eligible for attorney's fees. *See* JA 134-50. In the final opinion and order, the court granted plaintiff's request for fees and costs after making downward adjustments to account for his limited success and the inadequate documentation of hours. *See* JA 151-58.

### A. Statutory Background

### 1. FOIA's Fee Provisions

The Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, generally mandates disclosure, upon request, of government records held by an agency of the federal government, except to the extent such records are protected from disclosure by a specific statutory exemption or exclusion. Prior to 1986, FOIA authorized agencies to charge fees for document search and duplication and further provided that such fees should be waived or reduced wherever that was found to be "in the public interest because furnishing the information can be considered as primarily benefiting the general public." 5 U.S.C. § 552(a)(4)(A) (1982).

3

In 1986, Congress amended these fee and fee waiver provisions in several respects. *See* Freedom of Information Reform Act of 1986, Pub. L. No. 99-570, §§ 1801-1804, 100 Stat. 3207, 3207–48-50 (1986) (amending 5 U.S.C. § 552(a)(4)). First, the amendments revised and clarified FOIA's fee standards. Among other things, the amendments authorized the Office of Management and Budget to establish a uniform schedule of fees for all agencies; provided for recovery of certain costs associated with record review, search, and duplication; and limited the fees that could be charged to educational, scientific, or news media organizations seeking records for non-commercial uses. 5 U.S.C. § 552(a)(4)(A)(i), (ii), (iv). Second, the amendments clarified the standard for determining whether fees should be waived. *See id.* § 552(a)(4)(A)(iii) (allowing for "public interest" waivers if the request "is likely to contribute significantly to public understanding of the operations or activities of the government" and "is not primarily in the commercial interest of the requester"). Congress subsequently amended FOIA's fee provisions to prohibit the assessment of certain fees if agencies miss FOIA deadlines. *See id.* § 552(a)(4)(A)(viii).

As part of the 1986 overhaul of the FOIA fee provisions, Congress also addressed the relationship of the general FOIA fee provisions to agency-specific fee provisions set forth in other laws. That amendment, codified at 5 U.S.C. § 552(a)(4)(A)(vi), provides that "[n]othing in this subparagraph shall supersede fees chargeable under a statute specifically providing for setting the level of fees for particular types of records."

4

## 2. SSA's Independent Fee Statute

This case also involves an independent fee statute, 42 U.S.C. § 1306(c), that authorizes SSA to charge the "full costs" for responding to any requests for information (including FOIA requests) that are not directly related to the administration of SSA programs. Section 1306(c) provides that:

> *Notwithstanding sections 552 and 552a of Title 5 or any other provision of law*, whenever the Commissioner of Social Security or the Secretary determines that a request for information is made in order to assist a party in interest (as defined in section 1002 of Title 29) with respect to the administration of an employee benefit plan (as so defined), or is made for any other purpose not directly related to the administration of the program or programs under this chapter to which such information relates, such Commissioner or Secretary may require the requester to pay the full cost, as determined by such Commissioner or Secretary, of providing such information.

42 U.S.C. § 1306(c) (emphasis added). The provision thus unambiguously forecloses any constraints that other statutes, including FOIA, might otherwise impose on SSA's broad discretion to recover such fees.

Congress added this provision as part of the Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, § 2207, 95 Stat. 357, 838-39 (amending Section 1106 of the Social Security Act). The committee reports accompanying this amendment state that Congress intended that SSA's authority to recover "the full cost" of such searches would displace the existing FOIA fee requirements, thereby ensuring that the social security trust funds were not being used to subsidize such information requests.

5

*See* H.R. Rep. No. 97-158, at 253 (1981); S. Rep. No. 97-139, at 457-58 (1981); H.R. Rep. No. 97-208, at 976 (1981) (Conf. Rep.).

The agency's implementing regulations expressly authorize the recovery of the "full cost" of responding to requests that are "not directly related to the administration" of SSA programs. *See* 20 C.F.R. § 402.175(a) (invoking SSA's authority under 42 U.S.C. § 1306(c)). The regulations set forth "major criteria" to determine whether "a proposed use" is "directly related to the administration of [an SSA] program," while preserving its discretion to "consider on a case by case basis those requests which do not meet these criteria but are claimed to be program related." 20 C.F.R. § 402.170(a)(2). SSA has indicated, for example, that it "generally will not charge" in certain circumstances: (1) when the "information [is] needed to assure the accuracy of [SSA's] records on which [the requester's] present or future Social Security benefits depend"; or (2) when "furnishing information under [42 U.S.C. § 405(c)(2)(A)]" related to the administration of benefits and wage records. *See* 20 C.F.R. § 402.170(a)(1), (b).

Even if a request is not directly related to agency programs, the regulations provide that SSA "will waive or reduce the fees we would otherwise charge" for "disclosure of the information" if the requester "make[s]" a "request for a waiver or reduction at the same time [the requester] make[s] [the] request for records" and SSA determines that the request is in the "public interest" and "is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.185. No other provisions

6

provide any other basis to waive fees for requests that are not directly related to SSA programs. If a request is not directly related to an SSA program purpose and is not eligible for a fee waiver or reduction, SSA will recoup the full costs for providing that information, including the "direct and indirect costs" according to the separate fee schedule set out in 20 C.F.R. § 402.175(c). *See id.* § 402.175(a), (c).

## B.    Factual Background

Plaintiff Robert E. Shapiro is a medical doctor and professor of neurological sciences and the president of the Alliance for Headache Disorders Advocacy. On October 5, 2018, plaintiff submitted a broad FOIA request to SSA seeking a wide range of documents related to headaches and migraines, including "all relevant correspondence, emails, memoranda, drafts, cost-benefit analyses, public comments, and related guidance documents." JA 91-92 (quotation marks omitted). Plaintiff requested that SSA provide "document[s] from and between SSA offices and offices of other Federal Government agencies" and to do so "regardless of [the] age" of the documents. *See id.*

On May 29, 2019, SSA responded that the request "presents unusual circumstances because there is a need to search for and collect records from Social Security components or field offices." JA 42 (emphasis omitted). The agency also advised plaintiff of an estimated fee of $2,908 to cover the costs of search time spent responding under 42 U.S.C. § 1306(c). JA 42. In so doing, SSA explained that 42 U.S.C. § 1306(c) "gives the agency the authority to charge full costs for responding to

7

information requests" like plaintiff's "that are for non-program related purposes, regardless of the fee provisions of FOIA." JA 42. Plaintiff paid the fee on June 5, 2019. *See* JA 47. After conducting an initial search, SSA released two memoranda to plaintiff, withheld 1,377 responsive pages under FOIA Exemption 5, and redacted personal information about individuals from the released pages under FOIA Exemption 6. JA 39-40.

On August 23, 2019, plaintiff timely appealed from this determination, challenging the adequacy of the search and the withholdings. *See* JA 14-22. Plaintiff also argued that he was entitled to a refund of the fees charged because SSA had not complied with FOIA's time limits, 5 U.S.C. § 552(a)(4)(A)(viii)(I). *See* JA 14, 34-36.

SSA undertook further review and searches after determining that its "initial interpretation" of the request "was too narrow." JA 94. SSA conducted that review by requesting the identification of employees who might have responsive records from "ten agency Headquarters components," excluding only the Office of the Inspector General and the Office of Human Resources because they do not have "responsibility for issuance of programmatic policy or regulations." JA 96-98. SSA searched the Outlook email records for 134 custodians for the search terms "headache, or migraine, or neurological" without any date limitations, as well as the electronic shared files from the Office of Legislation and Congressional Affairs. JA 98-99. Based on sampling of the potentially responsive records, SSA determined that there would be

1,581,644 pages of potentially responsive records that would all need to be manually reviewed. JA 100-01.

At that point, the search had already "substantially exceeded the 83-hour estimate" on which the original fee notification was made, and SSA estimated that it would take an additional 193,311.6 hours to review those records. *See* JA 93, 100-01. The agency noted that it would take "92.62 years for one full-time employee to complete the request, or all six of [the relevant office's] employees working full time on this case for 15.44 years." JA 103. SSA explained that this undue burden was the result of the "unreasonably broad nature" of plaintiff's FOIA request, including that it had "no time limitations"; requested "all types of records, without any limitation"; requests "records from all agency offices, including internal and external communications," including many that would involve "deliberative decision-making"; and involves a "broad subject area" that "could include every aspect of the agency deliberative and decision-making processes." JA 95-96. SSA further explained that devoting that level of resources to plaintiff's request would "severely interfere" with its ability to perform its other duties, including processing other FOIA requests. JA 103.

## C. Prior Proceedings

Plaintiff filed this FOIA suit in district court before SSA had completed its evaluation of his administrative appeal. *See* JA 6-13. While the litigation was pending, SSA informed the court that it had completed its supplemental review and determined

9

that plaintiff's request was overly broad and unduly burdensome for the reasons described above. *See* JA 91-103.

On March 8, 2021, the district court issued a decision granting in part and denying in part the parties' cross-motions for summary judgment. The court first agreed with SSA that plaintiff's request was "clearly unreasonably broad" because it "had no time limits, no document type limitations, no custodian limitations, no geographic locations, . . . encompassed numerous subject matters," and extended to exchanges between SSA and "all 'offices of other Federal Government agencies.'" JA 116. The court therefore granted summary judgment to SSA on this issue and dismissed plaintiff's claim that SSA's search was inadequate. *See id.* The court did, however, require SSA to provide additional details as to the basis for the withholdings in the documents it had already processed. *Id.*

The court also held that plaintiff was entitled to a refund of the fees he had paid for SSA to process his request because the agency had not responded to that request within FOIA's 20-day deadline, *see* 5 U.S.C. § 552(a)(4)(A)(viii) (prohibiting agency from charging certain fees if it has not complied with FOIA time limits). *See* JA 117-20. The court rejected SSA's argument that 42 U.S.C. § 1306(c) allowed the agency to charge fees notwithstanding contrary provisions in FOIA. JA 119. In the court's view, section 1306(c) and section 552(a)(4)(A)(viii) established conflicting rules that "can be harmonized by interpreting the 2007 Amendment as prohibiting the charging of fees when an agency fails to timely respond to a FOIA request." *Id.* The

10

court concluded that any other result would render section 552(a)(4)(A)(viii) "superfluous because it would allow an agency to charge fees regardless of whether it complied with FOIA deadlines." JA 120. In reaching this result, however, the court did not address the broad language in section 1306(c) making that provision applicable "[n]otwithstanding" any other provision of law (including FOIA).

Based on SSA's declaration and Vaughn index, *see* JA 123-33, the court agreed that SSA had properly withheld responsive documents under FOIA Exemptions 5 and 6, JA 135-46. The court therefore acknowledged that the question of whether plaintiff "substantially prevailed" under FOIA was a "close call" because he "did not prevail on the central issue of his case." JA 147. However, the court concluded that plaintiff was ultimately eligible for fees because he obtained two favorable judicial rulings: (1) an order requiring SSA to refund his fees, and (2) an order requiring SSA to explain the reasons it withheld various documents within a prescribed time period. *Id.* Applying the four-factor test for assessing entitlement to fees, the court found that most of the factors weighed in plaintiff's favor (*e.g.*, the public benefit and the nature of plaintiff's interest in the documents), while only one factor—the reasonableness of the agency's decision to withhold certain documents—weighed against a fee award. JA 146-49.

In a later order, the district court partially granted plaintiff's request for fees and costs, reducing the amount of fees by approximately 50% to account for plaintiff's limited success and inadequate documentation of hours. JA 156-58. The

11

court awarded $10,262.75 in fees and $444.50 in costs and entered final judgment. JA 158-59.

## SUMMARY OF ARGUMENT

Plaintiff sought three forms of relief in this suit: (1) an order requiring SSA to search for and disclose additional documents under FOIA, (2) an order that SSA refund the fees charged to complete that search, and (3) attorney's fees and costs for the lawsuit. The district court correctly concluded that SSA was not required to process plaintiff's FOIA request because the request was overly broad and burdensome and that SSA's withholding of documents that had already been processed was justified. However, the district court erroneously concluded that FOIA rules prohibiting certain fees for untimely FOIA responses also barred SSA from charging plaintiff fees here, despite an independent fee statute specifically authorizing SSA to recover such fees "[n]otwithstanding" contrary FOIA rules. *See* 42 U.S.C. § 1306(c).

The district court's fee waiver analysis cannot be squared with the plain text of Section 1306(c). That provision unambiguously authorizes SSA to charge FOIA requestors the "full cost" of responding to FOIA requests that are "not directly related" to SSA's programs. 42 U.S.C. § 1306(c). By broadly stating that section 1306(c) applies "[n]otwithstanding" FOIA "section[] 552" or "any other provision of law," *id.*, Congress made clear that SSA's authority to recover the full cost of responding to requests for information and documents displaces any provision of

FOIA that might otherwise limit such fees. The district court fundamentally erred by disregarding the plain text of section 1306(c)—indeed, nowhere even acknowledging the "[n]otwithstanding" clause—and instead trying to "harmonize[]" that provision with FOIA rules barring recovery of certain fees for untimely FOIA responses that section 1306(c) expressly makes irrelevant. *See* JA 117-20.

Moreover, because the district court's conclusion that plaintiff was a prevailing party eligible for attorney's fees under FOIA depends on the court's erroneous ruling in plaintiff's favor on the fee-waiver issue, the attorney's fee award should be vacated and remanded to give the district court an opportunity to consider whether plaintiff remains a prevailing party eligible for *any* attorney's fees, or whether the fee award should be further reduced given the elimination of the principal legal ruling in plaintiff's favor.

## STANDARD OF REVIEW

This Court reviews the district court's resolution of legal questions de novo and "a district court's award of attorneys' fees for an abuse of discretion." *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009) (per curiam).

**ARGUMENT**

**I.     The District Court Erred in Holding that Plaintiff Was Entitled to a Refund of the FOIA Search Fee Charged by SSA.**

The district court concluded that plaintiff was entitled to a waiver of fees charged by SSA to complete the work necessary to respond to his broad FOIA request because SSA failed to respond within the time limits specified by section 552(a)(6) of FOIA. But the plain text of SSA's independent fee statute clearly forecloses that argument. To protect the social security trust funds, Congress expressly authorized SSA to recover the "full cost" of information requests "[n]otwithstanding sections 552 and 552a of Title 5 or any other provision of law." *See* 42 U.S.C. § 1306(c); *see also* H.R. Rep. No. 97-158, at 287; S. Rep. No. 97-139, at 457-58. Section 1306(c) thus plainly authorized SSA to recover fees for the costs of responding to plaintiff's overly broad FOIA request, notwithstanding any FOIA provisions that would otherwise impose penalties for untimely responses.

Because 42 U.S.C. § 1306(c) empowers SSA to recover the full cost of responding to "request[s] for information" that are "not directly related to the administration of . . . [SSA] programs" and to do so "notwithstanding section[] 552," any FOIA fee provisions that might otherwise cabin SSA's authority in this area must give way. Congress has not repealed section 1306(c) through any amendment to FOIA that expressly supersedes any part of section 1306(c). The district court thus erred in concluding that general amendments to FOIA that prohibit most agencies

14

from recovering certain fees if the agencies' responses are untimely implicitly repealed SSA's independent authority under section 1306(c) to recover those costs notwithstanding any contrary provision of FOIA. *See* JA 117-20.

The inclusion of the "[n]otwithstanding" clause in section 1306(c) unequivocally exempts SSA from any FOIA provisions that would otherwise restrict SSA's authority to recover the "full cost" of responding to "request[s] for information . . . for any other purpose not directly related to the administration of the program or programs under this chapter to which such information relates." 42 U.S.C. § 1306(c). Indeed, this is the only fee provision of which the government is aware that specifically indicates that it applies "[n]otwithstanding" section 552 of FOIA.[1]

Because section 1306(c)'s notwithstanding clause expressly displaces any potentially contrary FOIA provisions, the district court clearly erred by attempting to "harmonize[]" the "conflict" it perceived between section 1306(c) and section 552(a)(4)(A)(viii) "by interpreting the 2007 Amendment as prohibiting the charging of fees when an agency [including SSA] fails to timely respond to a FOIA request."

---

[1] The other examples of exemptions from FOIA's requirements arise in provisions that instead shield sensitive information from public disclosure "[n]otwithstanding" FOIA, *see* 6 U.S.C. §§ 488a(h)(1), 623(a), (e); 10 U.S.C. §§ 130b(a), 1506(f); 49 U.S.C. §§ 114(r)(1), 31143(b), 44912(d)(2)(A), 44921(b)(5), as well as one that authorized an Oversight Board for Puerto Rico to obtain "official data" necessary to carry out its mission from the federal or territorial government "[n]otwithstanding" FOIA, 48 U.S.C. § 2124(c). And the fee statute that Congress described as qualifying as a superseding fee statute under FOIA's own superseding fee statute provision did not include its own notwithstanding clause. *Cf.* 132 Cong. Rec. 29,618 (1986) (citing 44 U.S.C. § 1708 (1982)).

15

*Compare* JA 119, *with, e.g., NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 939 (2017) (explaining that the use of notwithstanding in a statute "shows which provision prevails in the event of a clash" (quotation marks omitted)), *and Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) (noting that repeals by implication are disfavored). The district court likewise erred in opining that SSA's interpretation of section 1306(c) would "render the 2007 Amendment superfluous" or a "nullity." JA 119-20. FOIA, as amended, generally precludes agencies from charging certain fees in connection with untimely government responses so long as no statutory exception from FOIA's fee-preclusion provision applies. Those provisions are not rendered a "nullity" simply because the previously-enacted section 1306(c) overrides that general rule in a limited subset of SSA cases. *Cf. Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1323 (2020) ("Presented with two statutes, the Court will 'regard each as effective'—unless Congress' intention to repeal is 'clear and manifest,' or the two laws are 'irreconcilable.'" (quotation marks omitted)); *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) (holding that the canon against surplusage "does not apply" where "giving effect to both" provisions "would not render one or the other wholly superfluous").

None of the later-enacted amendments to section 552's fee provisions indicate any intent to repeal SSA's authority to charge fees pursuant to 42 U.S.C. § 1306(c). To the contrary, while 42 U.S.C. § 1306(c) confers statutory authority for SSA to charge fees independently of 5 U.S.C. § 552(a)(4)(A)(vi), Congress's subsequent addition of

16

that FOIA provision to clarify that certain fee statutes "specifically providing for setting the level of fees for particular types of records" are not displaced by general FOIA provisions, *see* 5 U.S.C. § 552(a)(4)(A)(vi), demonstrates that Congress understood and fully accepted the possibility that more specific fee statutes would control over general FOIA fee provisions in certain circumstances. Subsequent FOIA amendments generally barring agencies from recovering certain fees for untimely responses do not reference, much less purport to amend, SSA's independent statutory authority under section 1306(c) to recover such fees or the separate recognition in section 552(a)(4)(A)(vi) that FOIA does not trump the requirements of more specific fee statutes. *See, e.g.*, *Morton*, 417 U.S. at 550-51. The district court fundamentally erred by concluding that later FOIA amendments *sub silentio* revoked the express authority conferred in section 1306(c) for SSA to recover the "full cost" of responding to requests for information like plaintiff's FOIA request here.

The legislative history of 42 U.S.C. § 1306(c) likewise confirms that Congress intended for section 1306(c) to displace general FOIA fee rules. Congress established an exception for SSA against the backdrop of the then-current FOIA fee provision, which did not contain any exception recognizing superseding fee statutes. *See* 5 U.S.C. § 552(a)(4)(A) (1982). Moreover, Congress purposefully drafted section 1306(c) in expansive terms, rejecting the Senate version of that provision, which was limited to requests for furnishing earnings to administrators of pension plans, in favor of the House version, which more broadly applied to "a request for information . . . for any

17

other purpose not directly related to the administration of [an SSA] program." *Compare* S. 1377, 97th Cong. § 707 (1981), *with* H.R. 3982, 97th Cong. § 2207 (1981), as enacted as Pub. L. No. 97-35, § 2207, 95 Stat. at 838, *and* H.R. Rep. No. 97-208, at 976 (describing differences between two proposals and adopting House version).

The committee reports underscore that Congress intended to displace FOIA fee provisions with respect to this second category of information requests that were not directly related to the administration of SSA programs by allowing SSA to recover the "full cost" of responding to such requests, while also ensuring that SSA would continue to subsidize requests by individuals that related to their own potential benefits under the social security programs. *See* H.R. Rep. No. 97-158, at 253 (describing the bill that was ultimately adopted). The committee reports also explained that the amendments would have an important cost-saving role by allowing SSA to recover costs for FOIA requests that FOIA would have otherwise required the agency to subsidize by drawing from the social security trust funds. *See* H.R. Rep. No. 97-158, at 287; S. Rep. No. 97-139, at 457-58.[2]

In contrast, nothing in the legislative history of the later-enacted FOIA amendments expresses any similar intent to displace SSA's unambiguous, pre-existing

---

[2] The implementation of this statutory authority has, in fact, served this purpose by enabling SSA to recoup significant savings for the social security trust funds. In 2021 alone, SSA recovered $498,866.29 of the costs of processing FOIA requests. See *SSA FOIA Annual Report Fiscal Year 2021*, § X, https://perma.cc/962Y-MSNE (reporting data for fiscal year 2021).

authority to recover the full costs of responding to certain types of requests for information under section 1306(c). While Congress expressed general concerns with untimely agency responses in the 2007 and 2016 amendments to FOIA's fee provisions, Congress did not address the potential interplay between any of the amendments with more specific fee statutes like 42 U.S.C. § 1306(c), much less indicate an intention to override any of those provisions. *Cf.* S. Rep. No. 110-59, at 3, 6-7 (2007); H.R. Rep. No. 110-45, at 3-4, 6 (2007); S. Rep. No. 114-4, at 4-7 (2015); H.R. Rep. No. 114-391, at 12 (2016).

## II. The Attorney's Fee Award Should Be Vacated Because the District Court's View that Plaintiff Substantially Prevailed Rested in Part on its Erroneous Holding that Plaintiff Was Entitled to a Fee Waiver.

FOIA litigants are only eligible for the award of fees and costs if they can demonstrate that they have "substantially prevailed" in the litigation. 5 U.S.C. § 552(a)(4)(E)(i); *see also, e.g.*, *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009) (per curiam). A plaintiff must show that he "succeed[ed]" on a "significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quotation marks omitted). Because the district court's conclusion that plaintiff satisfied this burden depended, at least in part, on the court's resolution of the fee waiver issue in plaintiff's favor, *see* JA 147-48, the reversal of that ruling calls into question whether plaintiff prevailed on any significant

19

issue. This Court should accordingly vacate and remand the award of attorney's fees for reconsideration by the district court in the first instance.

The district court acknowledged that the question of "[w]hether [p]laintiff substantially prevailed here is a close call" because he "did not prevail on the central issue of his case, obtaining the release of the requested records or establishing that SSA wrongfully withheld them." JA 147; *see also* JA 120-21. The court, however, concluded that plaintiff met this threshold eligibility requirement because the court had ordered SSA to refund the FOIA fees and ordered SSA to provide an explanation of its withholdings on a certain timetable. JA 147-48. That the ultimate question remained a very close one is evident in the court's subsequent decision to reduce the fees by 50% to account for "his limited success and failure to achieve his ultimate objective," as well as his inadequate documentation of hours. *See* JA 156. If the court's fee-refund order is reversed, plaintiff's success will be even more limited, and the district court should thus have the opportunity to consider in the first instance whether to award any fees at all or to further reduce the amount of fees.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be vacated and reversed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

*Of Counsel:*

ROYCE B. MIN
*General Counsel*

*U.S. Social Security Administration*

NIKOLAS KEREST
*United States Attorney*

CHARLES W. SCARBOROUGH

*s/ Caroline D. Lopez*

CAROLINE D. LOPEZ
*Attorneys, Appellate Staff*
*Civil Division, Room 7535*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4825*
*caroline.d.lopez@usdoj.gov*

September 2022

21

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,967 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Caroline D. Lopez*
Caroline D. Lopez

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2022, I electronically filed the foregoing
brief with the Clerk of the Court for the United States Court of Appeals for the
Second Circuit by using the appellate CM/ECF system.


*s/ Caroline D. Lopez*
Caroline D. Lopez

**ADDENDUM**

# TABLE OF CONTENTS

5 U.S.C. § 552(a)(4)(A)......................................................................................A1

42 U.S.C. § 1306(c)............................................................................................A4

**5 U.S.C. § 552**

**§ 552. Public information; agency rules, opinions, orders, records, and proceedings**

**(a)** Each agency shall make available to the public information as follows:

* * *

  **(4)(A)(i)** In order to carry out the provisions of this section, each agency shall promulgate regulations, pursuant to notice and receipt of public comment, specifying the schedule of fees applicable to the processing of requests under this section and establishing procedures and guidelines for determining when such fees should be waived or reduced. Such schedule shall conform to the guidelines which shall be promulgated, pursuant to notice and receipt of public comment, by the Director of the Office of Management and Budget and which shall provide for a uniform schedule of fees for all agencies.

  **(ii)** Such agency regulations shall provide that--

    **(I)** fees shall be limited to reasonable standard charges for document search, duplication, and review, when records are requested for commercial use;

    **(II)** fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by an educational or noncommercial scientific institution, whose purpose is scholarly or scientific research; or a representative of the news media; and

    **(III)** for any request not described in (I) or (II), fees shall be limited to reasonable standard charges for document search and duplication.

In this clause, the term "a representative of the news media" means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience. In this clause, the term "news" means information that is about current events or that would be of current interest to the public. Examples of news-media entities are television or radio stations broadcasting to the public at large and publishers of periodicals (but only if such entities qualify as disseminators of "news") who make their products available for purchase by or subscription by or free distribution to the general public. These examples are not all-inclusive. Moreover, as methods of news delivery evolve (for example, the adoption of the electronic dissemination of newspapers through telecommunications services), such alternative media shall be considered to be news-media entities. A freelance journalist shall be

regarded as working for a news-media entity if the journalist can demonstrate a solid basis for expecting publication through that entity, whether or not the journalist is actually employed by the entity. A publication contract would present a solid basis for such an expectation; the Government may also consider the past publication record of the requester in making such a determination.

**(iii)** Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

**(iv)** Fee schedules shall provide for the recovery of only the direct costs of search, duplication, or review. Review costs shall include only the direct costs incurred during the initial examination of a document for the purposes of determining whether the documents must be disclosed under this section and for the purposes of withholding any portions exempt from disclosure under this section. Review costs may not include any costs incurred in resolving issues of law or policy that may be raised in the course of processing a request under this section. No fee may be charged by any agency under this section--

**(I)** if the costs of routine collection and processing of the fee are likely to equal or exceed the amount of the fee; or

**(II)** for any request described in clause (ii)(II) or (III) of this subparagraph for the first two hours of search time or for the first one hundred pages of duplication.

**(v)** No agency may require advance payment of any fee unless the requester has previously failed to pay fees in a timely fashion, or the agency has determined that the fee will exceed $250.

**(vi)** Nothing in this subparagraph shall supersede fees chargeable under a statute specifically providing for setting the level of fees for particular types of records.

**(vii)** In any action by a requester regarding the waiver of fees under this section, the court shall determine the matter de novo: Provided, That the court's review of the matter shall be limited to the record before the agency.

**(viii)(I)** Except as provided in subclause (II), an agency shall not assess any search fees (or in the case of a requester described under clause (ii)(II) of this subparagraph, duplication fees) under this subparagraph if the agency has failed to comply with any time limit under paragraph (6).

**(II)(aa)** If an agency has determined that unusual circumstances apply (as the term is defined in paragraph (6)(B)) and the agency provided a timely written

notice to the requester in accordance with paragraph (6)(B), a failure described in subclause (I) is excused for an additional 10 days. If the agency fails to comply with the extended time limit, the agency may not assess any search fees (or in the case of a requester described under clause (ii)(II) of this subparagraph, duplication fees).

**(bb)** If an agency has determined that unusual circumstances apply and more than 5,000 pages are necessary to respond to the request, an agency may charge search fees (or in the case of a requester described under clause (ii)(II) of this subparagraph, duplication fees) if the agency has provided a timely written notice to the requester in accordance with paragraph (6)(B) and the agency has discussed with the requester via written mail, electronic mail, or telephone (or made not less than 3 good-faith attempts to do so) how the requester could effectively limit the scope of the request in accordance with paragraph (6)(B)(ii).

**(cc)** If a court has determined that exceptional circumstances exist (as that term is defined in paragraph (6)(C)), a failure described in subclause (I) shall be excused for the length of time provided by the court order.

**42 U.S.C. § 1306**

**§ 1306. Disclosure of information in possession of Social Security Administration or Department of Health and Human Services**

\*\*\*

**(c) Cost reimbursement**

Notwithstanding sections 552 and 552a of Title 5 or any other provision of law, whenever the Commissioner of Social Security or the Secretary determines that a request for information is made in order to assist a party in interest (as defined in section 1002 of Title 29) with respect to the administration of an employee benefit plan (as so defined), or is made for any other purpose not directly related to the administration of the program or programs under this chapter to which such information relates, such Commissioner or Secretary may require the requester to pay the full cost, as determined by such Commissioner or Secretary, of providing such information

\*\*\*