# 22-1191

---

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

ROBERT E. SHAPIRO,

*Plaintiff-Appellee,*

v.

UNITED STATES SOCIAL SECURITY ADMINISTRATION,

*Defendant-Appellant.*

———————————

On Appeal from the United States District Court
for the District of Vermont

———————————

**PLAINTIFF-APPELLEE ROBERT E. SHAPIRO'S BRIEF**

———————————

Justin G. Sherman
Emily J. Joselson
Langrock Sperry & Wool, LLP
210 College Street
P.O. Box 721
Burlington, VT 05402-0721
jsherman@langrock.com
ejoselson@langrock.com
802-864-0217

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... ii

STATEMENT OF ISSUES PRESENTED FOR REVIEW ........................................1

STATEMENT OF THE CASE ................................................................3

    A.    Relevant Facts ...................................................................3

    B.    Relevant Procedural History .................................................4

SUMMARY OF ARGUMENTS ................................................................7

ARGUMENT ...........................................................................8

I.    The FOIA ..........................................................................8

II.    SSA's Statute ...................................................................12

III.    The Trial Court Correctly Concluded That Both the FOIA and Section 1306(C) Can Apply If They Are Read to Mean That Defendant Cannot Charge a Fee When It Fails to Abide By the FOIA's Response Deadlines. ..........................................................12

IV.    If the FOIA Provisions and Section 1306(C) Conflict, Then the FOIA and the Provisions Incorporated in the 2007 Amendments Must Apply Because They Were Passed More Recently. ...................................................................17

V.    Even if Section 1306(c) Controls, Plaintiff is Entitled to a Fee Waiver Because His Requests Are Directly Related to the Administration of SSA Programs. ...........................................................17

VI.    The Court Should Affirm the District Court's Award of Attorneys' Fees and Remand For a Determination of Fees Incurred With This Appeal. ..................................................................19

CONCLUSION ........................................................................22

CERTIFICATE OF COMPLIANCE ..........................................................23

i

# TABLE OF AUTHORITIES

**Cases**

*A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138 (2d Cir. 1994) ...................................9

*Bensman v. Nat'l Park Serv.*, 806 F. Supp. 2d 31 (D.D.C. 2011) ................... 11, 17

*Bloomer v. U.S. Dep't of Homeland Sec.*, 870 F. Supp. 2d 358 (D. Vt. 2012) .....8, 9

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)........................................................20

*Cnty. of Nassau v. Leavitt*, 524 F.3d 408 (2d Cir. 2008) ........................................15

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) ..............................................................................................9

*Dumont v. U.S. Dep't of the Air Force*, 2014 WL 12543866 (D. Vt. Mar. 5, 2014) ........................................................................................8

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018)..................................................13

*Halpern v. FBI*, 181 F.3d 279 (2d Cir. 1999) ..........................................................9

*In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir. 1990) ....................................17

*NARA v. Favish*, 541 U.S. 157 (2004) .....................................................................9

*Nat'l Council of La Raza v. U.S. Dep't of Justice*, 411 F.3d 350 (2d Cir. 2005)......8

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978)....................................8

*Pietrangelo v. U.S. Army*, 568 F.3d 341 (2d Cir. 2009) ........................................20

*Radzanower v. Touche Toss & Co.*, 426 U.S. 148 (1976).......................................17

*Warren v. Colvin*, 744 F.3d 841 (2d Cir. 2014).......................................................19

**Statutes**

5 U.S.C. § 552(a)(3)(A) ..............................................................................................9

5 U.S.C. § 552(a)(3)(A)-(B) .......................................................................................9

5 U.S.C. § 552(a)(4)(A)(viii) ............................................................... 11, 14

5 U.S.C. § 552(a)(4)(B) ...........................................................................10

5 U.S.C. § 552(a)(4)(E)(ii)........................................................................19

5 U.S.C. § 552(a)(4)(viii)(II) .....................................................................6

5 U.S.C. § 552(a)(6)(A)(i)-(ii) ..................................................................10

29 U.S.C. § 794 .......................................................................................19

42 U.S.C. § 1306(c) ........................................... 1, 5, 7, 12, 13, 14, 15, 17

Pub. L. No. 97-35, § 2207, 95 Stat. 357, 838-39 ......................................17

## Other Authorities

153 Cong. Rec. 192, S15701-04 ......................................................... 11, 16

S.Rep. No. 110–59, 110th Cong., 1st Sess. (Apr. 30, 2007) ................. 8, 10, 11, 16

## Regulations

20 C.F.R. § 402.170 .................................................................................18

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Plaintiff Robert E. Shapiro ("Plaintiff" or "Dr. Shapiro") filed his Freedom of Information Act ("FOIA") request with the United States Social Security Administration ("Defendant" or "SSA") more than four years ago. SSA filed an untimely response, and ultimately produced only two irrelevant memoranda and one publicly available document, withheld 1,377 pages of documents pursuant to FOIA Exceptions 5 and 6, and assessed him a $2,908 fee. Plaintiff filed an administrative appeal of these issues, including the assessed fee. Again, Defendant did not timely respond to Plaintiff's administrative appeal, and Dr. Shapiro exercised his right under the FOIA and filed this Action.

As it directly relates to this appeal, the District Court for the District of Vermont found that FOIA and the 2007 Amendments to that statute included a fee waiver provision prohibiting Defendant and other agencies from assessing FOIA requestors a fee if the agency violates the FOIA's statutorily imposed deadlines, and ordered Defendant to reimburse Plaintiff $2,908 because it violated FOIA's deadlines. JA117-20. In so finding, the District Court rejected Defendant's argument that it properly assessed the fee under 42 U.S.C. § 1306(c) ("Section 1306(c)"). Defendant claims that notwithstanding the FOIA's fee waiver provision, Section 1306(c) permits it to assess a requester the "full cost" of responding to a

request that is "not directly related to the administration of the [SSA] program or programs," even it disregards the FOIA's response deadline.

The issues this Court must decide are:

1. Does Section 1306(c), which was passed in 1981, allow Defendant to ignore the fee waiver provision of the FOIA, which was added in 2007, that prohibits an agency from assessing fees when it violates the statutorily imposed deadlines?

2. Did Dr. Shapiro file the FOIA request for a purpose that was directly related to the administration of the SSA program or programs?

3. Whether the attorneys' fees the trial court awarded to Plaintiff for substantially prevailing on numerous important issues in the case can be reversed and remanded if Defendant prevails on one of those victories in this case?

## STATEMENT OF THE CASE

**A.     Relevant Facts**

Dr. Shapiro is a medical doctor, a member of the American Board of

Psychiatry and Neurology, specializing in Neurology, a Professor emeritus of

Neurological Sciences at the Larner College of Medicine at the University of

Vermont, and is the founding president of the Alliance for Headache Disorders

Advocacy, a national organization advocating on behalf of the public interests of

Americans with disabling headache disorders. JA007.

On October 5, 2018, Dr. Shapiro submitted a FOIA request to SSA seeking

information regarding Defendant's assessment, evaluation, and decisions regarding

inclusion or exclusion of a proposed listing for impairments due to migraine and

other headache disorders in Defendant's Listing of Impairments. JA009, JA045.

Dr. Shapiro requested these documents to further his ongoing scholarship on

migraine disability, and because such information would further the public's

understanding of how Defendant evaluates migraine and headache disorder claims

and impairments for purposes of qualifying for Social Security benefits. JA011.

The FOIA specifies that Defendant had 20 business days to respond to the

request, putting their deadline to respond at or around November 2, 2018. JA009.

Defendant did not respond until May 29, 2019, nearly six months late. JA009-10,

JA014-43. When it finally responded, Defendant indicated Dr. Shapiro's request

3

constituted "unusual circumstances," that it needed additional time to respond, and charged Dr. Shapiro $2,908 for the estimated cost of responding to the request. JA009-10, JA042-43. On July 26, 2019, Defendant sent Dr. Shapiro two memoranda, another publicly available document, withheld 1,377 pages of responsive documents purportedly under Exemptions 5 and 6, and as importantly, also offered no indication whatsoever either that Dr. Shapiro had filed a FOIA request that was not properly perfected, or that Defendant's search for any further responsive documents pursuant to the FOIA request was incomplete. JA010, JA039-40.

Dr. Shapiro submitted a timely appeal, raising issues regarding the improper withholding of documents and the assessed fee. JA010, JA014-37. The deadline for Defendant to respond was on or around September 23, 2019. JA011. By the end of December 2019, Dr. Shapiro received no response and sued for access to documents, reimbursement of the $2,908 fee he paid Defendant, and requested attorneys' fees and costs. *See* JA001-13.

## B. Relevant Procedural History

Dr. Shapiro filed this lawsuit only after Defendant failed to respond to his appeal for approximately two months. In that suit, Dr. Shapiro sought (1) a determination that Defendant failed to respond to his FOIA request within the statutory timeframe; (2) Defendant failed to produce responsive records; and (3)

Defendant improperly denied or failed to respond to his request for a fee waiver or reduction. JA104. After Dr. Shapiro sued, Defendant determined there were far more responsive documents: in fact, more than 1.58 million additional pages of responsive documents. JA091-101.

Defendant moved to dismiss and alternatively for summary judgment, and Dr. Shapiro filed a cross motion for summary judgment. JA002-03. Defendant argued that Dr. Shapiro's FOIA requested was not perfected, and he did not exhaust his administrative remedies because he did not reasonably describe the records sought. JA110. The Court rejected this argument and sided with Dr. Shapiro. It found that since Defendant did not mention that Dr. Shapiro's request was unreasonably broad or burdensome in its initial response, that "Defendant should not be heard to belatedly assert that Plaintiff's claim was not perfected" (JA111) and that in any event, "Defendant's untimely response to it serves as a waiver of its exhaustion defense." JA111. The Court agreed with Defendant that the request was unreasonably broad and burdensome, but ruled that Defendant needed to "specify a basis for withholding the initial 1,377 responsive documents identified under Exemptions 5 and 6" by a date certain. JA116.

The District Court also granted Plaintiff's request for a refund of the $2,908 that SSA charged him. JA120. The Court weighed whether Section 1306(c) permitted SSA to charge a fee even though FOIA specified that an agency "shall

5

not assess search fees if the agency fails to comply with any time limit of FOIA."

JA119. The Court found that the "two statutes can be harmonized by interpreting the 2007 Amendment[s] as prohibiting the charging of fees when an agency fails to timely respond to a FOIA request." *Id*. It reasoned:

> Defendant's interpretation would render the 2007 Amendment superfluous because it would allow an agency to charge fees regardless of whether it complied with FOIA deadlines, provided it could cite a separate statute setting fees. Defendant is therefore prevented from assessing a fee when it fails to comply with FOIA time requirements unless there is an exception under 5 U.S.C. § 552(a)(4)(viii)(II). Any other interpretation would render the 2007 Amendment a nullity and frustrate its legislative purpose.

JA119-20. The trial court delayed deciding whether Plaintiff was a prevailing party until after briefing on FOIA Exemptions 5 and 6. JA121.

Thereafter the parties briefed whether Defendant improperly withheld 1,377 pages of documents pursuant to Exemptions 5 and 6. JA003-04. The District Court sided with Defendant and found that it properly withheld the documents. JA134-46. Having previously demurred on Plaintiff's request for attorneys' fees until the exemption issues were decided, the Court ruled that Plaintiff was a "substantially prevailing" party and entitled to a partial award of attorneys' fees. JA146-50. In particular, the District Court found that Plaintiff "established that SSA's response to his document request was untimely and unsupported by adequate explanation" (JA147); that he "sought and obtained a judicial order requiring SSA to refund his FOIA fees" (*id*.); and forced Defendant to justify its withholdings. *Id*. In sum, the

6

Court concluded that its order "changed the legal relationship of the parties and, therefore, is sufficient to establish plaintiff's eligibility for attorney's fees." *Id*.

## SUMMARY OF ARGUMENTS

The trial court correctly found that both the FOIA and Section 1306(c) could be interpreted in a way that gives meaning to both statutes. That is, the trial court found that the "two statutes can be harmonized by interpreting the 2007 Amendments as prohibiting the charging of fees when an agency fails to timely respond to a FOIA request." JA119. If Defendant's interpretation were true, then it could avoid FOIA's fee waiver provision entirely, even if it responded months or centuries late, or not at all. This approach would eviscerate the purpose of the FOIA and the OPEN Government Act, which aimed to provide an enforcement mechanism to the chronic problem of agencies issuing late responses.

If this Court finds that the trial court erred and Section 1306(c) and the FOIA fee waiver provision cannot be harmonized, then the FOIA fee waiver provision, which was incorporated in 2007 as part of the OPEN Government Act, controls because that provision was passed more than 25 years ***after*** Section 1306(c). Additionally, even if Section 1306(c) does apply, Plaintiff is entitled to a fee waiver because his request is directly related to the administration of SSA programs.

7

Lastly, because Plaintiff prevailed on the fee waiver issue that is the subject of this appeal, plus other issues not subject to appeal, the Court should affirm the district court's award of attorneys' fees.

## ARGUMENT

### I.   The FOIA

Since it was first adopted in 1966, the FOIA has played an important role in American democracy. As the United States Supreme Court has explained, "[t]he basic purpose of [the] FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *Bloomer v. U.S. Dep't of Homeland Sec.*, 870 F. Supp. 2d 358, 363-64 (D. Vt. 2012). "Congress enacted FOIA 'to promote honest and open government and to assure the existence of an informed citizenry [in order] to hold the [agency decision makers] accountable." *Dumont v. U.S. Dep't of the Air Force*, 2014 WL 12543866, at *5 (D. Vt. Mar. 5, 2014) (citing *Nat'l Council of La Raza v. U.S. Dep't of Justice*, 411 F.3d 350, 355 (2d Cir. 2005)); S. Rep. 110-59 (recognizing the FOIA "established a policy of openness toward information within [the government's control"] and "remains an indispensable tool in shedding light on bad policies and government abuses."). The FOIA provides citizens a means to "know 'what their Government is up to.'" *NARA v. Favish*, 541 U.S. 157,

8

171-72 (2004) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). The Supreme Court cautioned that the FOIA should "not be dismissed as a convenient formalism," but "defines a structural necessity in a real democracy." *Id*. at 172. As the Second Circuit explained, the FOIA "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies." *Halpern v. FBI*, 181 F.3d 279, 286 (2d Cir. 1999).

"Under the statute, 'any member of the public is entitled to have access to any record maintained by a federal agency, unless that record is exempt from disclosure under one of the Act's nine exemptions.'" *Bloomer*, 870 F. Supp. 2d at 364 (quoting *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994)). To receive documents under a FOIA request, a requestor must reasonably describe the records sought and make the request in accordance with published rules. 5 U.S.C. § 552(a)(3)(A)-(B).

In light of these important underlying considerations, the FOIA requires federal agencies to promptly release records in response to a request for production, 5 U.S.C. § 552(a)(3)(A), and allows federal courts "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld." *Bloomer*, 870 F. Supp. 2d at 364 (citing 5 U.S.C. §

9

552(a)(4)(B)). An agency must respond to a FOIA request or a FOIA appeal by responding within 20 business days after receipt. 5 U.S.C. § 552(a)(6)(A)(i)-(ii).

An agency's refusal to comply with the FOIA's statutorily imposed deadlines is no small matter. Congress passed the OPEN Government Act of 2007 ("2007 Amendments" or "OPEN Government Act"), which amended certain sections of the FOIA, including the statutory time requirements in Section 552(a)(6)(A). The legislative history indicates that the Senate Judiciary Committee was very concerned that "lax FOIA enforcement has undermined FOIA and eroded the public's right to know," and therefore identified an "urgent need to update and strengthen FOIA." Senate Report No. 110-59. The Committee continued: "Chief among the problems with FOIA are the major delays encountered by FOIA requestors." *Id*. To address this problem the OPEN Government Act "strengthen[ed] FOIA," in important part by addressing the committee's "concerns with lax FOIA enforcement and compliance by helping Americans obtain timely response to their FOIA requests and providing government officials with the tools that they need to ensure that our government remains open and accessible." *Id*. Specifically, it "addresses the growing backlog of FOIA requests and restores meaningful deadlines for agency action, by ensuring that the 20-day statutory clock runs immediately upon an agency's receipt of a request and by imposing consequences on federal agencies for missing the deadline." *Id*.; 153 Cong. Rec.

10

192, S15701-04 (2007) (Sen. Leahy remarking that the 2007 Amendments

"improve[s] transparency by restoring meaningful deadlines for agency action

under FOIA" and "impos[es] real consequences on federal agencies for missing

FOIA's 20-day statutory deadline"). *Bensman v. Nat'l Park Serv.*, 806 F. Supp. 2d

31, 37 (D.D.C. 2011). In *Bensman*, the court relied heavily on the legislative

history and the purpose of the 2007 Amendments:

> The legislative history of the 2007 Amendments evinces a strong desire
> by Congress to curb agencies' delays in processing FOIA requests. *See*
> S.Rep. No. 110–59, 110th Cong., 1st Sess. (Apr. 30, 2007). The Senate
> report explains that the 2007 Amendments "address [ ] the growing
> backlog of FOIA requests and *restore[ ] meaningful deadlines* for agency
> action, by ensuring that the 20–day statutory clock runs immediately upon
> an agency's receipt of a request and *by imposing consequences* on federal
> agencies for missing the deadline." *Id.* at 3 (emphasis added). Indeed, "the
> major delays encountered by FOIA requestors" were "[c]hief among the
> problems with FOIA" that Congress sought to remedy by passing the 2007
> Amendments. *Id.* (noting also that "the oldest outstanding FOIA requests
> date back to 1989—before the collapse of the Soviet Union").

*Id.*, at 37-38. To ensure a meaningful enforcement mechanism, Congress imposed

"consequences on agencies that . . . fail to comport with FOIA's requirements,"

including a provision stating that "***an agency shall not assess search fees if the***

***agency fails to comply with any time limit***" of the FOIA. *Id.* at 38 (citing 5 U.S.C.

552(a)(4)(A)(viii).

## II.     SSA's Statute

The SSA allows that the provision of the fee statute upon which it relies, 42

U.S.C. § 1306(c), was passed in 1981, more than 25 years before the 2007 OPEN

Government Act. Section 1306(c) states in its entirety:

> Notwithstanding sections 552 and 552a of Title 5 or any other provision
> of law, whenever the Commissioner of Social Security or the Secretary
> determines that a request for information is made in order to assist a party
> in interest (as defined in section 1002 of Title 29) with respect to the
> administration of an employee benefit plan (as so defined), or is made for
> any other purpose not directly related to the administration of the program
> or programs under this chapter to which such information relates, such
> Commissioner or Secretary may require the requester to pay the full cost,
> as determined by such Commissioner or Secretary, of providing such
> information.

## III.    The Trial Court Correctly Concluded That Both the FOIA and Section 1306(C) Can Apply If They Are Read to Mean That Defendant Cannot Charge a Fee When It Fails to Abide By the FOIA's Response Deadlines.

Put simply, Defendant argues that Section 1306 permits the SSA to charge

FOIA requesters the "full cost" for responding to requests even if they do not

comply with the FOIA's statutorily imposed deadlines. See Brief for Appellant

United States Social Security Administration ("Appellant Brief"), at 12-13.

According to Defendant, Section 1306 "unequivocally and "unambiguously

forecloses any constraints that other statutes" may impose, like the FOIA provision

that prohibits the assessment of fees when agencies ignore deadlines. (*Id*., at 5 &

15). To Defendant, there is no circumstance under which the FOIA prohibits it

12

from charging the "full cost" for its response, even where the FOIA mandates the waiver of fees for untimely responses. Defendant's view violates various principles of statutory interpretation: it does not adopt an interpretation that gives effect to both statutes and renders the fee enforcement provision of the FOIA a nullity and superfluous. Additionally, Defendant's interpretation frustrates the important policy considerations underlying the FOIA.

Defendant's position sets forth an either-or scenario where either the FOIA's fee waiver provision applies or Section 1306(c) applies, but not both. The District Court explained that when there are two statutes that touch on the "same topic," a court is not at liberty to "pick and choose among congressional enactments" but "must instead strive to give effect to both." JA119 (citing *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018)). Where a party proposes an interpretation of two statutes that "cannot be harmonized, and that one displaces the other," the party advocating for displacement "bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow." JA119. The District Court correctly found that FOIA's fee waiver statute and Section 1306(c) "can be harmonized by interpreting the 2007 Amendments as prohibiting the charging of fees when an agency fails to timely respond to a FOIA request." *Id*. This interpretation is correct because it gives meaning to both the FOIA's fee waiver provision and deadline compliance while also allowing Defendant to charge

13

the "full cost" for responding under Section 1306(c) if it complies with the FOIA's deadlines. Defendant's interpretation would give meaning to only Section 1306(c), and none to the FOIA. This approach violates the judicial cannon of construction favoring interpretations that give meaning to two statutes.

Defendant has not met its "heavy burden" of showing a "clearly expressed congressional intention" that Section 1306(c) is designed to displace the aspect of the OPEN Government Act that mandates an agency "not assess any search fees . . . if the agency has failed to comply" with the statutorily imposed deadlines. 5 U.S.C. § 552(a)(4)(A)(viii). The opposite is true. The 2007 Amendments were enacted more than 25 years **after** Section 1306(c). Therefore, it is impossible for Congress to have expressed any intent, much less a clear one, for the 2007 Amendment to be displaced by Section 1306(c), which is decades older. Moreover, the provision of the 2007 Amendments waiving fees when an agency submits an untimely response is mandatory: "any agency **shall not** assess search fees[.]" In contrast, Defendant's ability to assess fees under Section 1306(c) is permissive: it provides that the Commissioner or Secretary "**may require** the request to pay the full cost" of search fees. In sum, where the 2007 Amendments were passed 25 years after Section 1306(c) and contains mandatory instead of permissive language, Defendant cannot meet its heavy burden of establishing a "clearly expressed congressional intention" to displace the later enacted law.

14

Another well-known canon of statutory construction—to interpret statutes by giving meaning to every word and avoid interpretations that renders words superfluous or a nullity—favors the trial court's conclusions and rejects Defendant's proposed interpretation. JA119-20 (citing *Cnty. of Nassau v. Leavitt*, 524 F.3d 408, 416 (2d Cir. 2008) (holding "[w]e are obliged [however,] to give effect, if possible, to every clause and word of a statute, and to render none superfluous").  The trial court reasoned that if Defendant's interpretation was correct—and SSA could submit untimely responses under the FOIA but charge the "full cost" under Section 1306(c)— it would render the 2007 Amendments a nullity and superfluous "because it would allow an agency to charge fees regardless of whether it complied with FOIA deadlines." JA119-20. Indeed it would. If Defendant were correct that it could charge the full fee even if it was months or centuries late in responding to a request, then the provision of the FOIA requiring a fee waiver would be rendered meaningless. Therefore, Defendant's interpretation offends established cannons of statutory construction.

Moreover, any interpretation of the FOIA under which an agency can submit untimely responses without facing a modicum of negative consequences ignores the purpose of the FOIA, and more specifically the 2007 Amendments thereto. The legislative history of those amendments indicates that one of Congress's chief concerns with the FOIA was agencies' untimely responses to FOIA requests and

lax enforcement of the same. To address this, the 2007 Amendments aimed to "strengthen" the FOIA to ensure timely responses, a key part of which prohibited agencies from charging search fees if they failed to comply with "any time limit of FOIA." JA119. Further, nowhere in the statutory language of the OPEN Government Act, or in the relevant Senate commentary at the time of its passage, is it understood that some federal agencies would or could be exempt from public transparency and accountability on the basis of preemptive agency-specific statutes. Sen. Rep. No 110-59; 153 Cong. Rec. 192, S15701-04. In fact, this interpretation is wholly at variance with the explicit original legislative intent of Senator Patrick Leahy, the bill's author, "*to restore the public's trust in their government*" by "*restoring meaningful deadlines for agency action under FOIA*" and "*imposing real consequences on federal agencies*" for missing them. *Id*. (emphasis added). Senator Leahy never suggested or implied that only some agencies need comply.  Defendant's position stands in stark contrast to this aim. According to Defendant, it could set its own timelines, play by its own rules, call its own balls and strikes, and face no consequence for ignoring statutorily imposed deadlines. In fact, Defendant could never respond. The FOIA has been the law for nearly 60 years to promote an open government and informed citizenry, and Defendant's interpretation of the statute would completely hollow out these noble aims.

16

IV.    **If the FOIA Provisions and Section 1306(C) Conflict, Then the FOIA and the Provisions Incorporated in the 2007 Amendments Must Apply Because They Were Passed More Recently.**

If Defendant is correct that Section 1306(c) cannot be harmonized with FOIA's fee waiver provision, then the later statute controls because it was the most recently enacted of the two. The Second Circuit has ruled that "when two statutes are in irreconcilable conflict, we must give effect to the most recently enacted statute since it is the most recent indication of congressional intent." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 991 (2d Cir. 1990) (citing *Radzanower v. Touche Toss & Co.*, 426 U.S. 148, 155 (1976)).

Congress added Section 1306(c) as part of the Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, § 2207, 95 Stat. 357, 838-39. Appellant Brief, at 5, 17-18. The OPEN Government Act, which added the provision that an agency "shall not assess search fees . . . if the agency fails to comply with any time limit' of FOIA" was enacted in 2007, or 25 years after Section 1306(c). *Bensman*, 806 F. Supp. 2d at 38. Between the two, the 2007 Amendments are later and must be given effect.

V.    **Even if Section 1306(c) Controls, Plaintiff is Entitled to a Fee Waiver Because His Requests Are Directly Related to the Administration of SSA Programs.**

Defendant justifies charging Plaintiff fees under Section 1306(c) and related regulations. Appellant Brief, at 5-7. Under this provision, and notwithstanding the

FOIA, Defendant may charge fees where the SSA Commissioner determines a request is "made for any other purpose not directly related to the administration of the program or programs under this Act to which such information relates[.]" The "major criteria" the SSA uses to make this determination is: "(A) Is the information needed to pursue some benefit under the Act?; (B) Is the information needed solely to verify the accuracy of information obtained in connection with a program administered under the Act; (C) Is the information needed in connection with an activity which has been authorized under the Act; (D) Is the information needed by an employer to carry out her or his taxpaying responsibilities under the Federal Insurance Contributions Act of section 218 of the Act?" 20 C.F.R. § 402.170.

Even applying the SSA's criteria, two of these factors weigh heavily in favor of charging no fee. Factor A—"whether the information is needed to pursue a benefit under the Act"—supports a fee waiver. Disclosure of the records will educate the public, informing them about how to pursue disability benefits under the Social Security Act related to migraine and headache disorders. Therefore, it is needed to pursue a benefit under the Act. Factor C—whether the information is needed in connection with an activity authorized under the Act—also weighs heavily in favor of a fee waiver. The information is needed in connection with an activity authorized under the Act: namely, how Defendant reviews, evaluates and

considers disability applications for migraine and headache disorders. Based on the limited public information in this regard, both currently available, and in particular available at the time that Dr. Shapiro filed the FOIA request, the public has remained substantially in the dark about important aspects of how the agency operates a vital social program. As detailed in Plaintiff's administrative appeal (JA014-37), SSA opacity in this regard has contributed to serious, quantifiable, and continuing inequities in the implementation of SSDI/SSA programs which have selectively and adversely impacted claimants disabled by migraine and headache disorders, in violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) and procedural due process rights under the 14th amendment. (Doc. 17-1 (Affidavit of Robert E. Shapiro in Support of Plaintiff's Cross Motion for Summary Judgment and Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment).

## VI. The Court Should Affirm the District Court's Award of Attorneys' Fees and Remand For a Determination of Fees Incurred With This Appeal.

A court may award attorneys' fees to a FOIA litigant who substantially prevails. 5 U.S.C. § 552(a)(4)(E)(ii). A complainant substantially prevails under the FOIA if they obtain relief through a judicial order or an enforceable written agreement or consent decree. *Id*.; *Warren v. Colvin*, 744 F.3d 841, 845 (2d Cir. 2014). Any "alteration in the legal relationship of the parties" warrants an award of reasonable attorneys' fees and expenses. *Buckhannon Bd. & Care Home, Inc. v.*

19

*W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). The District Court correctly found that Plaintiff substantially prevailed on several key issues in the case because that court's orders changed the legal relationship of the parties. JA147. Specifically, the lower court agreed with Plaintiff on the benefits he achieved: (i) Plaintiff exhausted his administrative remedies after Defendant failed to timely respond to his initial FOIA request and non-response to his appeal; (ii) Defendant failed to justify its withholdings under FOIA Exemptions 5 and 6, and was ordered to justify its withholdings to the court; (iii) Plaintiff was entitled to a reimbursement of the $2,908 fee Defendant assessed him; and (iv) Plaintiff was a substantially prevailing party and entitled to a "partial award of reasonable attorneys' fees and costs." JA147-49.

Even if Defendant prevails on this appeal and is found to have properly assessed Plaintiff a fee of $2,908, and for the foregoing reasons it should not, Plaintiff still achieved other significant victories on important issues in the case that warrants a fee award.

When making fee decisions, courts also consider four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information." *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009). All these factors militate in favor of a fee

award.

There is little doubt that the second and third of these factors—the commercial benefit to Plaintiff and the nature of Plaintiff's interest in the records—weigh heavily in favor of a fee award. Defendant acknowledges that Plaintiff has an academic interest in the records. (Doc. 26, at 12). Additionally, Plaintiff has articulated a strongly justified public advocacy interest in the records. Plaintiff does not stand to enjoy any commercial benefit from the outcome of this case. In fact, thus far it has been *against* his commercial interest to bring the case, as he has incurred currently unreimbursed attorneys' fees, expenses, and has expended significant time involved with the litigation.

Regarding the first factor, Plaintiff's action has already conferred a benefit on the public. Leaving aside the fee waiver issue, the trial court's decision has the effect of requiring governmental agencies to comply with the time requirements under the FOIA, both with respect to an agency's deadlines to respond to an initial request and an appeal.

Moreover, if Plaintiff prevails before this Court, he should be entitled to an award of attorneys' fees incurred in connection with this appeal. If the Court rules in Plaintiff's favor, he would have established important precedent that where the SSA fails to comply with the FOIA's deadlines, it cannot charge fees pursuant to the FOIA's fee waiver provision. Plaintiff is unaware of any such case. If this were

21

the outcome, Plaintiff's actions would directly address and further the issues

underlying the OPEN Government Act of 2007: imposing consequences on

agencies that ignore FOIA's deadlines. He would have achieved this victory at

great expense to himself, and by appealing Defendant has forced Plaintiff, an

individual requestor, to go through the time, expense, and effort of defending his

efforts on appeal. A reimbursement of attorneys' fees for his efforts are plainly

warranted.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court

affirm the trial court's order and find that Plaintiff is entitled to attorneys' fees and

costs he incurred in connection with this appeal. Plaintiff requests that the Court

remand the case to the trial court so that it can decide the proper amount of any

attorneys' fee award incurred in connection with this appeal.

DATED at Burlington, Vermont this 8th day of December, 2022.

LANGROCK SPERRY & WOOL, LLP

_____
Justin G. Sherman
Emily J. Joselson
210 College Street, P.O. Box 721
Burlington, VT 05402-0721
jsherman@langrock.com
ejoselson@langrock.com
802-864-0217
Attorneys for Plaintiff-Appellee Robert E. Shapiro

22

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

ROBERT E. SHAPIRO,
         Plaintiff-Appellee,

   v.

UNITED STATES SOCIAL
SECURITY ADMINISTRATION,
         Defendant-Appellant.

Docket No. 22-1191

---

## **CERTIFICATE OF COMPLIANCE**

NOW COMES Plaintiff-Appellee Robert E. Shapiro, by and through his counsel, Justin G. Sherman, Esq., of Langrock Sperry & Wool, LLP, and pursuant to F.R.A.P. 32(a)(7)(B), certifies the following:

1.     The number of words in the brief is 4,692 as indicated by the word count of the Microsoft Office 365 word processing system used to prepare the brief.

2.     The brief complies with the typeface requirement of F.R.A.P. 32(a)(4) and the type-style requirement of F.R.A.P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in font size 14, times new roman type-style.

23

DATED at Burlington, Vermont this 8th day of December, 2022.

LANGROCK SPERRY & WOOL, LLP

*/s/ Justin G. Sherman*
Justin G. Sherman
Emily J. Joselson
PO Box 721, 210 College Street
Burlington, VT 05402-0721
jsherman@langrock.com
ejoselson@langrock.com
802-864-0217
Attorneys for Plaintiff-Appellee

24

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

ROBERT E. SHAPIRO,
          Plaintiff-Appellee,
    v.

UNITED STATES SOCIAL
SECURITY ADMINISTRATION,
          Defendant-Appellant.

Docket No. 22-1191

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of December, 2022, I, Justin G. Sherman,

attorney for Plaintiff-Appellee Robert E. Shapiro, electronically filed with the

Clerk of the Court *Plaintiff-Appellee Robert E. Shapiro's Brief* by using the

CM/ECF system.  The CM/ECF system will provide service of such filing via

Notice of Electronic Filing (NEF) to the following NEF party:

    CHARLES W. SCARBOROUGH
    CAROLINE D. LOPEZ
    United States Department of Justice
    Civil Division, Room 7535
    U.S. Department of Justice
    950 Pennsylvania Avenue NW
    Washington, DC 20530
    caroline.d.lopez@usdoj.gov
    charles.scarborough@usdoj.gov

DATED at Burlington, Vermont this 8th day of December, 2022.

LANGROCK SPERRY & WOOL, LLP

Justin G. Sherman
Emily J. Joselson
PO Box 721, 210 College Street
Burlington, VT 05402-0721
jsherman@langrock.com
ejoselson@langrock.com
802-864-0217
Attorneys for Plaintiff-Appellee

1610602.1

2