# No. 22-1191

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---

ROBERT E. SHAPIRO,

*Plaintiff-Appellee*,

v.

UNITED STATES SOCIAL SECURITY ADMINISTRATION,

*Defendant-Appellant*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT,
No. 2:19-cv-00238-cr

---

**BRIEF OF AMICUS CURIAE THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS IN SUPPORT OF PLAINTIFF-APPELLEE**

---

Katie Townsend
*Counsel of Record*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310
ktownsend@rcfp.org

## CORPORATE DISCLOSURE STATEMENT

The Reporters Committee for Freedom of the Press is an unincorporated association of reporters and editors with no parent corporation and no stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................................ iii

IDENTITY AND INTEREST OF AMICUS CURIAE ........................................... 1

SOURCE OF AUTHORITY TO FILE ................................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 2

ARGUMENT ..................................................................................................... 4

    I.   The SSA Statute does not supersede FOIA's ordinary fee provisions, and the Tardiness Prohibition forecloses SSA's right to charge fees for a late response. ......................................................................... 4

        A.  Congress cabined the types of statutes that supersede FOIA's ordinary fee schedules through the 1986 Amendments. ........................ 4

        B.  The SSA Statute does not satisfy FOIA's Displacement Provision. ..................................................................................... 7

            1.  The SSA Statute does not satisfy the Displacement Provision because it does not identify particular types of records. ................. 7

            2.  The SSA Statute does not satisfy the Displacement Provision criteria because it is discretionary rather than mandatory............... 9

        C.  FOIA's ordinary fee provisions apply here, including the 2007 Amendment's Tardiness Prohibition................................................... 10

CONCLUSION................................................................................................. 11

CERTIFICATE OF COMPLIANCE................................................................... 13

CERTIFICATE OF SERVICE ......................................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Bensman v. Nat'l Park Serv.*,
    806 F. Supp. 2d 31 (D.D.C. 2011) ....................................................... 11

*Collins v. W. Hartford Police Dep't*,
    324 F. App'x 137 (2d Cir. 2009)............................................................ 2

*Env't Prot. Info. Ctr. v. U.S. Forest Serv.*,
    432 F.3d 945 (9th Cir. 2005).............................................................. 10

*Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms
    & Explosives*,
    984 F.3d 30 (2d Cir. 2020) ............................................................. 3, 4

*Oglesby v. U.S. Dep't of the Army*,
    79 F.3d 1172 (D.C. Cir. 1996) .......................................................... 7, 9

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
    30 F.3d 339 (2d Cir. 1994)................................................................. 2

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,
    139 S. Ct. 2449 (2019) .................................................................. 4, 7

*Yanofsky v. U.S. Dep't of Commerce*,
    306 F. Supp. 3d 292 (D.D.C. 2018) .................................................... 8, 9

## Statutes

42 U.S.C. § 1306.................................................................*passim*

44 U.S.C. § 1708.......................................................................... 6

44 U.S.C. § 2116.......................................................................... 7

5 U.S.C. § 552......................................................................... 1, 2

5 U.S.C. § 552(a)(4)(A)(vi) .................................................... 3, 6, 7, 8

5 U.S.C. § 552(a)(4)(A)(viii) ................................................... 3, 10, 11

Anti-Drug Abuse Act of 1986,
  Pub. L. No. 99-570, 100 Stat. 3207 (1986) ....................................................... 3, 5

Omnibus Budget Reconciliation Act of 1981,
  Pub. L. No. 97-35, 95 Stat. 357 (1981) ................................................................ 5

OPEN Government Act of 2007,
  Pub. L. No. 110-175, 121 Stat. 2524 (2007) ........................................................ 3

**Other Authorities**

132 Cong. Rec. 29616–21 (daily ed. Oct. 8, 1986) .............................................. 6, 7

S. Rep. No. 110-59 (2007) ...................................................................................... 11

Uniform Freedom of Information Act Fee Schedule and Guidelines,
  52 Fed. Reg. 10012 (Mar. 27, 1987) ..................................................................... 9

## IDENTITY AND INTEREST OF AMICUS CURIAE

Amicus curiae is the Reporters Committee for Freedom of the Press (the "Reporters Committee"). The Reporters Committee is an unincorporated nonprofit association founded by journalists and media lawyers in 1970, when the nation's press faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources. Today, its attorneys provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists. Members of the media, including the Reporters Committee, frequently rely on the Freedom of Information Act ("FOIA" or the "Act"), 5 U.S.C. § 552, to report on matters of public interest and to shed light on the activities of government. Accordingly, the Reporters Committee has an interest in ensuring FOIA is interpreted in a manner that is consistent with the plain text and the purpose of the Act, including the provisions Congress has added regarding fees for public records.

## SOURCE OF AUTHORITY TO FILE

Pursuant to Federal Rules of Appellate Procedure 27 and 29 and Local Rule 27.1, the Reporters Committee has filed a motion for leave to file this brief in support of Plaintiff-Appellee. Plaintiff-Appellee has consented to the filing of this amicus brief; Defendant-Appellant does not object to its filing.

## INTRODUCTION AND SUMMARY OF ARGUMENT[1]

The Reporters Committee for Freedom of the Press (the "Reporters Committee") writes as amicus curiae to address Congress's 1986 amendments to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act")—which significantly altered the Act's fee provisions—and the interaction between those provisions, as amended, and other statutes concerning fees. The District Court, below, failed to closely consider the 1986 amendments and subsequent amendments to FOIA, which together, as detailed herein, foreclose Defendant-Appellant Social Security Administration ("SSA") from charging fees for the FOIA request at issue in this case.[2]

The SSA asserts that a provision of its organic statute added in 1981, codified at 42 U.S.C. § 1306(c) (hereinafter the "SSA Statute"), supersedes all of FOIA's fee provisions, regardless of when they were enacted. *See* Brief for Appellant United States Social Security Administration ("Appellant's Brief") at 5.

---

[1]    The Reporters Committee takes no position on any issue not expressly addressed herein.

[2]    The Court "may affirm on any basis evident from the record." *Collins v. W. Hartford Police Dep't*, 324 F. App'x 137, 138–39 (2d Cir. 2009) (citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 343 (2d Cir. 1994) (holding that an appellate court can affirm a district court's order "on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely" (citation omitted))).

But five years after enacting that provision, in the 1986 amendments to FOIA, Congress explicitly cabined the types of other statutes that can supersede FOIA's ordinary fee provisions by adding specific criteria to the so-called "Displacement Provision," codified at 5 U.S.C. § 552(a)(4)(A)(vi). *See* Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, §§ 1801–1804, 100 Stat. 3207, 3207-48–50 (1986) (the "1986 Amendments"); *cf. Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 984 F.3d 30, 37 (2d Cir. 2020) ("[A] later adopted provision takes precedence over an earlier, conflicting provision of equal stature." (citation omitted)). As set forth below, the SSA Statute does not satisfy the plain text of the Displacement Provision, or its subsequent interpretation by two other Circuits and the Office of Management and Budget ("OMB"). Accordingly, SSA can charge only whatever fees FOIA otherwise provides for in responding to a FOIA request.

Further, FOIA's fee provisions were changed again in 2007 in an effort by Congress to encourage timely compliance with the Act's transparency mandate. *See* OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524 (2007). One change, codified at 5 U.S.C. § 552(a)(4)(A)(viii), precludes an agency from charging otherwise-applicable search or duplication fees if the agency fails to comply with FOIA's statutory deadlines. The rationale for this "Tardiness

3

Prohibition" is straightforward: an agency should not be permitted to flout FOIA's requirements and, at the same time, charge a requester fees.

Here, the SSA Statute does not meet the criteria for application of the Displacement Provision. FOIA's ordinary fee provisions, including the Tardiness Prohibition, applied. And because the SSA failed to timely respond to Plaintiff-Appellee's FOIA request, the Tardiness Prohibition precludes the charging of fees. Accordingly, the District Court's ruling to that effect should be affirmed.

## ARGUMENT

### I. The SSA Statute does not supersede FOIA's ordinary fee provisions, and the Tardiness Prohibition forecloses SSA's right to charge fees for a late response.

#### A. Congress cabined the types of statutes that supersede FOIA's ordinary fee schedules through the 1986 Amendments.

The government asserts that the SSA Statute, 42 U.S.C. § 1306(c), can "displace[] *any* provision of FOIA that might otherwise limit such fees." Appellant's Brief at 12–13 (emphasis added). But it is an "established rule" of statutory construction "that a later adopted provision takes precedence over an earlier, conflicting provision of equal stature." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2462 (2019); *see also Everytown for Gun Safety*, 984 F.3d at 37 (applying this "established rule" in the FOIA context based on the "text and history" of the two statutes).

4

Congress enacted the SSA Statute in 1981. *See* Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, § 2207, 95 Stat. 357, 838–39 (1981) (amending Section 1106 of the Social Security Act). In relevant part, it provides:

> Notwithstanding sections 552 . . . whenever the [SSA] determines that a request for information . . . is made for any other purpose not directly related to the administration of the program or programs under this chapter to which such information relates, [the SSA] may require the requester to pay the full cost . . . of providing such information.

42 U.S.C. § 1306(c). The government relies on the SSA Statute's "notwithstanding" language to assert that Congress intended "*any* FOIA fee provisions that might otherwise cabin SSA's authority" to set and charge fees to "give way." Appellant's Brief at 14 (emphasis added). But this interpretation ignores the text and history of later-enacted FOIA provisions, including the Displacement Provision, which was added in 1986, and the 2007 amendments.

In 1986, five years <u>after</u> enacting the SSA Statute, Congress significantly revised FOIA's fee provisions. *See* Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, §§ 1801–1804, 100 Stat. 3207, 3207-48–50 (1986). Part of the new fee provisions set up different "schedules" pursuant to which different types of fees could be assessed against different types of requesters (e.g., search, review, and duplication fees for commercial requesters, but only duplication fees for members of the news media). *See id.* In enacting these changes, Congress acknowledged

5

the existence of other, existing statutes that addressed fees in various ways, but decided that only some of them would supersede FOIA's new fee schedules. It did this by including specific limiting language in what is known as the Displacement Provision, codified at 5 U.S.C. § 552(a)(4)(A)(vi).

The Displacement Provision states that other statutes may supersede FOIA's fee schedules *only* if they "specifically provid[e] for setting the level of fees for particular types of records." *Id.* Thus, following enactment of the Displacement Provision, a separate statute may set an alternative fee schedule only if it identifies the "level of fees" for "particular types of records." *Id.* Otherwise, FOIA's ordinary fee schedules apply.

Congress was aware that under the 1986 amendments, other, existing "fee" statutes would not satisfy the Displacement Provision. Although there was not a traditional House report prepared for the 1986 amendments, legislative history prepared and compiled by Representatives Glenn English and Tom Kindness and entered into the Congressional record makes this clear. 132 Cong. Rec. 29616–21 (daily ed. Oct. 8, 1986) (the "English-Kindness Statement"). Therein, it was noted that while, for example, 44 U.S.C. § 1708 would qualify,

> the User Fee Statute, 31 U.S.C. § 9701 does not qualify under new subparagraph (4)(A)(vi) of the FOIA because it does not establish a specific level of fees. Similarly, the statute governing the National Library of Medicine, 42 U.S.C. § 275 et seq. (1982), is too general to qualify under the new FOIA subparagraph.

*Id.* at 29618.

In sum, the Displacement Provision must "take[] precedence over" any "earlier, conflicting provision of equal stature," *Tenn. Wine & Spirits Retailers Ass'n*, 139 S. Ct. at 2462, and sets forth the relevant criteria for determining whether a separate statute, like the SSA Statute, displaces FOIA's otherwise applicable fee schedules.

      B.     <u>The SSA Statute does not satisfy FOIA's Displacement Provision</u>.

          1.     The SSA Statute does not satisfy the Displacement Provision because it does not identify particular types of records.

As noted above, the Displacement Provision applies if a separate statute other than FOIA "specifically provid[es] for setting the level of fees for <u>particular types of records</u>." 5 U.S.C. § 552(a)(4)(A)(vi) (emphasis added). While this Court has not had occasion to interpret that language, whether a statute provides the necessary level of specificity was addressed by the D.C. Circuit in *Oglesby v. U.S. Department of the Army*; there the court examined whether the National Archive's fee statute, 44 U.S.C. § 2116(c), qualified under the Displacement Provision. *See* 79 F.3d 1172 (D.C. Cir. 1996). The D.C. Circuit held that the National Archive's statute did qualify because it "accurately identified" particular "types of records" (specifically, "materials transferred to the Archivist's custody"), *id.* at 1177 (cleaned up).

7

Years later in *Yanofsky v. U.S. Department of Commerce*, then-Judge Ketanji Brown Jackson applied the same plain-text interpretation to find that a different set of statutes did not satisfy the Displacement Provision.  *See* 306 F. Supp. 3d 292, 302 (D.D.C. 2018).  As Judge Jackson wrote:

> Not even the most probing evaluation of this [statutory] language could reasonably lead one to conclude that it identifies any particular types of records.  That is, neither statute refers to any records, documents, or written materials at all . . . .

*Id.* at 303 (internal citations and quotation marks omitted).

So too here: the SSA Statute does not refer to "records, documents, or written materials" at all, much less "particular types" of records.  It thus lacks the requisite specificity to trigger application of the Displacement Provision.  Instead, the SSA Statute refers to "information" combined with a cascade of vague conditions regarding the "purpose" of the request for such information.  42 U.S.C. § 1306(c).  It purports to apply if, in the SSA's determination, the "purpose" of the "request for information" is not "directly related" to administration of the agency's "programs" to which the requested information "relates."  *Id.*  As was true with the statutes cited by the Department of Commerce in *Yanofsky*, "[n]ot even the most probing evaluation" of the SSA Statute could "reasonably lead one to conclude that it identifies any 'particular types of records.'"  306 F. Supp. 3d at 303 (quoting 5 U.S.C. § 552(a)(4)(A)(vi)).  In fact, the SSA Statute is even <u>less</u> precise, as it fails

to provide even a definition of the "program or programs" to which requested "information" must "directly relate[]." *Compare* 42 U.S.C. § 1306(c), *with Yanofsky*, 306 F. Supp. 3d at 303 & n.5. Such broad, imprecise statutory language simply cannot "qualif[y] as the genre of fee-setting provision" that supersedes FOIA's fee schedules via the Displacement Provision. *Oglesby*, 79 F.3d at 1178–79.

> 2. The SSA Statute does not satisfy the Displacement Provision criteria because it is discretionary rather than mandatory.

Interpretations of the Displacement Provision by the Office of Management and Budget ("OMB") and the Ninth Circuit further foreclose its application to the SSA Statute. Since 1987, OMB has interpreted the Displacement Provision as applying only to statutes "that specifically require[] a government agency . . . to set the level of fees for particular types of records." *See* Uniform Freedom of Information Act Fee Schedule and Guidelines, 52 Fed. Reg. 10012, 10017 (Mar. 27, 1987) (emphasis added). In other words, a "qualifying statute must require, not merely permit, an agency to establish fees for particular documents." *Id.* at 10012. Adopting that interpretation, the Ninth Circuit has held that "only statutes setting mandatory fees, rather than statutes setting discretionary ones" can satisfy the Displacement Provision, because the OMB's regulations are "entitled to greater deference" than those of an agency that interprets a discretionary statute to displace

9

FOIA's fee schedule.  *Env't Prot. Info. Ctr. v. U.S. Forest Serv.*, 432 F.3d 945, 946, 949 (9th Cir. 2005).

The SSA Statute fails to meet that requirement because it "merely permit[s]" the agency to charge requesters on a basis that is different than FOIA's fee provisions: When the SSA "determines" that certain conditions are met, it "<u>may</u> require the requester to pay the full cost."  42 U.S.C. § 1306(c) (emphasis added).  As the SSA acknowledges, the statute affords it "discretion to recover [FOIA] fees."  Appellant's Brief at 5; *see also id.* at 6 (describing the SSA's "discretion" under the SSA Statute and implementing regulations).  For that reason too, as the Ninth Circuit concluded with respect to a similarly discretionary statute, *Env't Prot. Info. Ctr.*, 432 F.3d at 949, the SSA Statute cannot satisfy the Displacement Provision.

     C.    <u>FOIA's ordinary fee provisions apply here, including the 2007 Amendment's Tardiness Prohibition.</u>

In 2007, seeking to promote compliance with the Act's timing provisions, Congress further limited the circumstances under which agencies could collect fees for responding to a FOIA request.  Codified at 5 U.S.C. § 552(a)(4)(A)(viii), the Tardiness Prohibition provides that "an agency <u>shall not</u> assess" otherwise applicable search or duplication fees when it "has failed to comply with <u>any</u> time limit" under FOIA.  *Id.* (emphasis added).  By adding this provision, Congress

10

intended to restore "meaningful deadlines" on laggard federal agencies. *Bensman v. Nat'l Park Serv.*, 806 F. Supp. 2d 31, 37–38 (D.D.C. 2011) (quoting S. Rep. No. 110-59, at 3 (2007)).

Here, FOIA's ordinary fee schedules and the Tardiness Prohibition both apply. Under the latter, if the SSA "failed to comply with any time limit" under FOIA, then it is not permitted to assess any search or duplication fees. 5 U.S.C. § 552(a)(4)(A)(viii). SSA does not dispute that it failed to issue a timely final determination under FOIA. Appellant's Brief at 7. Thus, as the District Court correctly ruled, the SSA was prohibited from charging search (or duplication) fees in connection with Plaintiff-Appellee's FOIA request.

## CONCLUSION

For the foregoing reasons, the Reporters Committee urges the Court to affirm the District Court's grant of summary judgment to Plaintiff-Appellee with respect to the fees for his request.

Dated:    March 15, 2023
          Washington, D.C.

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
   *Counsel of Record*
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005

11

Telephone: (202) 795-9300
Facsimile: (202) 795-9310
ktownsend@rcfp.org

## CERTIFICATE OF COMPLIANCE

I, Katie Townsend, do hereby certify that the foregoing brief of amicus curiae:

1) Complies with the type-volume limitation of Local Rule 29.1(c) because it contains 2,434 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as calculated by the word-processing system used to prepare the brief; and

2) Complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point, Times New Roman font.

*/s/ Katie Townsend*
Katie Townsend
*Counsel of Record*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS

Dated:    March 15, 2023
Washington, D.C.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the United

States Court of Appeals for the Second Circuit by using the appellate CM/ECF

system with a resulting electronic notice to all counsel of record on December 15,

2022.

Dated:  March 15, 2023           */s/ Katie Townsend*
                                 Katie Townsend
                                    *Counsel of Record*
                                 REPORTERS COMMITTEE FOR
                                    FREEDOM OF THE PRESS